# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAVID SLOAN, Plaintiff ad Litem for the Estate of Christopher Sloan, et al.,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**ESTATE OF BLAKE OVERTON, et al.,** )<br>)<br>**Defendants.** )<br>_____) | Case No. 08-2571-JAR-DJW |

## MEMORANDUM AND ORDER

Plaintiff filed this action on November 13, 2008, against defendant Blake F. Overton, a/k/a Blake Fleming Overton, a/k/a Pimp Fleming Overton ("Blake Overton"), and defendant Judy Overton ("Judy Overton" and "defendant"), alleging three claims: (1) Judy Overton negligently entrusted a vehicle to Blake Overton, (2) Blake Overton negligently rendered services to Christopher Sloan, and (3) Judy Overton negligently entrusted a firearm to Blake Overton.[1] This matter is before the Court on defendant Judy Overton's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 47), relating to Count I, negligent entrustment of a vehicle, and Count III, negligent entrustment of a firearm. Plaintiff has responded, asking the Court to deny the motion or, in the alternative, to grant leave to amend his Complaint (Doc. 55). After considering the parties' submissions, the Court grants defendant's motion to dismiss as to Count I, but grants plaintiff's request to file a motion for leave to amend the Complaint as to Count III. The Court's reasoning is explained more fully below.

---

[1](Doc. 1.) The case caption has been changed to reflect the Court's January 25, 2010 Memorandum and Order (Doc. 77).

**I. Timing of Rule 12(b)(6) Defense**

Plaintiff argues that defendant's motion to dismiss is untimely, and defendant's Rule 12(b)(6) defense has been waived because defendant failed to raise it before answering. Defendant filed her Answer on December 11, 2008, and filed the present Motion to Dismiss on November 2, 2009. Defendant responds, however, that she preserved her Rule 12(b)(6) defense by specifically including it in her Answer, and the Scheduling Order provides that any Rule 12(b)(6) defense that was "timely preserved" could be filed as a motion no later than November 2, 2009.[2]

Technically, it is impermissible to file an answer and thereafter file a Rule 12(b)(6) motion to dismiss.[3] However, because Rule 12(h)(2) permits the court to consider "[a] defense of failure to state a claim upon which relief can be granted" within a Rule 12(c) motion for judgment on the pleadings,[4] the court may treat a Rule 12(b)(6) motion as if it had been submitted under Rule 12(c).[5] The distinction between the two motions is purely formal, because the court must review a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion.[6]

Here, defendant preserved the Rule 12(b)(6) defense in her Answer. However, in light of

---

[2](Doc. 29 at 9.)

[3]*See* Fed. R. Civ. P. 12(b) (a motion asserting defense of failure to state a claim "shall be made before pleading if a further pleading is permitted"); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 300–01 (2d ed. 1990) ("[A] post-answer Rule 12(b)(6) motion is untimely.").

[4]Fed. R. Civ. P. 12(h).

[5]*Thomas v. Travnicek*, No. 00-3360-GTV, 2003 WL 22466194, at *1 (D. Kan. Aug. 15, 2003).

[6]*Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) ("[w]e review a dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard applicable to a 12(b)(6) dismissal.") (citing *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000)).

the above, the Court will treat this defendant's post-answer motion to dismiss as if it had been styled a Rule 12(c) motion for judgment on the pleadings. The Court, therefore, turns to the merits of defendant's motion as it relates to the factual allegations of plaintiff's Complaint.

## II. Allegations in Plaintiff's Complaint

The following facts are alleged in plaintiff's Complaint (Doc. 1), and the Court draws all reasonable inferences in favor of the petitioner. Plaintiff David Sloan is the surviving father of Christopher Sloan, and the duly appointed personal representative of the Estate of Christopher Sloan. Defendant Judy Overton is the mother of defendant Blake Overton. In brief, plaintiff alleges that, on or around April 17, 2007, Judy Overton negligently entrusted a vehicle and a firearm to Blake Overton. Blake Overton drove Christopher Sloan to a high crime area in Kansas City, Kansas for the purpose of buying crack cocaine for his personal use. The drug deal went bad and Christopher Sloan died as a result of gunshot wounds.[7]

The Complaint states that, on or around April 17, 2007, Blake Overton lived with his mother at her residence, with her permission. Prior to the events surround April 17, 2007, Blake Overton's driving privileges from the State of Kansas were suspended and/or revoked due to multiple traffic violations, as well as drug and criminal convictions.

In Count I, plaintiff alleges Judy Overton negligently entrusted a vehicle to Blake Overton. Judy Overton knew or could have known that Blake Overton did not have valid driving privileges and was an incompetent or habitually careless driver. On previous occasions, Judy Overton hired attorneys to defend Blake Overton for a variety of traffic and criminal

---

[7]These facts about Blake Overton's trip to Kansas City, Kansas to purchase drugs are actually taken from Count II, in which plaintiff sets out his claim for negligent services against Blake Overton. These facts were not provided in either Count I or III.

3

offenses. Plaintiff lists Blake Overton's alleged driving, drug, and criminal offenses, which ultimately resulted in the loss of his driving privileges prior to April 17, 2007. Judy Overton was aware of Blake Overton's drug and alcohol addictions and criminal convictions, in part, because she paid for Blake Overton to attend various drug and alcohol counseling and rehabilitation services prior to April 17, 2007, totaling in excess of $25,000. Despite the fact Judy Overton knew of the severity of Blake Overton's drug and alcohol abuse, their recurring nature, and his multiple convictions for drug and alcohol abuse, and the fact he did not have a valid driver's license and was an incompetent driver, Judy Overton regularly provided an automobile to Blake Overton for his use.

On April 17, 2007, Christopher Sloan drove to Blake Overton's residence in Leawood, Kansas. Christopher Sloan left his car at Blake Overton's house and got into a vehicle driven by Blake Overton. The vehicle was owned and insured by Judy Overton, and Blake Overton used it with Judy Overton's permission.

Plaintiff alleges that, as a direct and proximate result of Judy Overton's breach of duty, Christopher Sloan suffered general and special damages, including gunshot wounds to his shoulder, neck, and head, and suffered various physical and emotional injuries, ultimately resulting in death as a consequence of the gunshot wounds. Plaintiff alleges that Judy Overton's conduct, in entrusting the vehicle to Blake Overton, was done willfully, wantonly, and performed with complete disregard for the rights of others, and plaintiff requests punitive damages as a result.

In Count III, plaintiff alleges Judy Overton negligently entrusted a firearm to Blake Overton. Judy Overton owned a handgun, which she had a duty to store in a safe and prudent

manner, taking into consideration the type of handgun, where the ammunition was located, and the circumstances of the gun's use, as well as her son's drug history and criminal activity. She had a duty to safeguard her handgun with the highest degree of care because it was a dangerous instrumentality. She breached her duty to properly safeguard the gun when she left it in a place where Blake Overton could gain access to it. Because she knew of Blake Overton's prior criminal record, including charges for drug use, driving under the influence, and other convictions, it was foreseeable that allowing Blake Overton to gain possession of the gun would lead to injury or death. It was reasonably foreseeable that Christopher Slaon and others would be injured due to Judy Overton's breach of duty to safeguard the gun.

Plaintiff alleges that, as a direct and proximate result of Judy Overton's breach of duty, Christopher Sloan suffered severe physical and emotional injuries, ultimately resulting in death as a consequence of the gunshot wounds. Plaintiff alleges that Judy Overton's conduct, in failing to safeguard her handgun, was willful, wanton, and performed with complete disregard for the rights of others, and plaintiff requests punitive damages as a result.

### III. Rule 12(c) Standards

In ruling on a Rule 12(c) motion to dismiss, the court will draw all reasonable inferences in favor of the plaintiff.[8] Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

---

[8]*Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

rests.⁹ To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."¹⁰

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"¹¹ The Supreme Court recently explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"¹² Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.¹³ Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."¹⁴ "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."¹⁵ "[T]he complaint must give the court

---

⁹*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly*: "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." 550 U.S. 544, 555 n.3 (2007).

¹⁰*Twombly*, 550 U.S. at 555, 570.

¹¹*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

¹²*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949–50 (2009).

¹³*Id.* at 1950.

¹⁴*Id.*

¹⁵*Id.* at 1949.

reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[16]

Finally, under Rule 12(b)(6) and Rule 12(c), "a court should consider only matters referred to or incorporated by reference in the pleadings or attached to the answer or complaint."[17] If the court considers matters outside the pleadings, the motion must be treated as one for summary judgment under Rule 56.[18]

## IV. Discussion

Plaintiff has attached to his response excerpts from Judy Overton's deposition. Because defendant's motion is brought under Rule 12(b)(6), the Court finds it inappropriate to consider materials outside of the pleadings. However, having reviewed the facts and testimony from Judy Overton's deposition, the Court finds its conclusion would be the same regardless. Drawing all reasonable inferences in favor of the plaintiff,[19] this Courts finds the facts alleged in plaintiff's Complaint fail to state a claim for negligent entrustment of the vehicle, but will allow plaintiff to file a motion for leave to amend the Complaint to provide further factual support for Count III.

The parties do not dispute that Kansas law should apply. Accordingly, the Court looks to Kansas law to decide the sufficiency of plaintiff's Complaint. Under Kansas law, a claim for negligent entrustment is a tort, requiring plaintiff to show (1) the existence of a duty of reasonable care owed by the defendant to the plaintiff, (2) a breach of that duty, (3) injury to

---

[16]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[17]*United States v. Ledford*, No. 07-cv-01568-WYD-KMT, 2009 WL 724061, at *5 (D. Colo. Feb. 9, 2009) (citing *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

[18]FED. R. CIV. P. 12(d); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

[19]*In re Sprint Corp ERISA Litig.*, 388 F. Supp. 2d 1207, 1217 (D. Kan. 2004).

7

plaintiff, and (4) a causal connection between the duty breached and the injury suffered.[20] More specifically, Kansas courts have defined negligent entrustment as follows:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows, or from facts known to him should know, to be *likely* because of his youth, inexperience or otherwise, *to use it in a manner involving unreasonable risk of bodily harm to himself and others* whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm *caused thereby* to them.[21]

To be actionable, negligent entrustment requires both that (1) the lender was negligent in her entrustment of the chattel, and (2) the borrower was negligent in his use of the chattel, directly and proximately resulting in a foreseeable injury to a third person arising out of the borrower's use of the chattel entrusted.[22]

---

[20]*Davey v. Hedden*, 920 P.2d 420, 429 (Kan. 1996); *Nero v. Kan. State Univ.*, 861 P.2d 768, 772 (Kan. 1993). Generally, whether a duty exists is a question of law; whether the duty was breached is a question of fact. *Nero*, 861 P.2d at 772. With regard to causation, in *Baker v. City of Garden City*, 731 P.2d 278 (Kan. 1987), the Kansas Supreme Court noted,

> Whether conduct in a given case is the cause in fact or proximate cause of plaintiff's injuries is normally a question of fact for the jury. [Citations omitted.] However, where the facts are such that they are susceptible to only one inference, the question is one of law and may be disposed of summarily by the court when the plaintiff has failed to establish the necessary burden of proof.

*Id.* at 281; *see also Davey*, 920 P.2d at 429.

[21]*Estate of Pemberton v. John's Sports Ctr., Inc.*, 135 P.3d 174, 187 (Kan. Ct. App. 2006) (internal quotations omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 390) (emphasis added).

[22]*See Priestly v. Skourup*, 45 P.2d 852, 854 (Kan. 1935). The Kansas Supreme Court clarified the relationship between the negligence of the lender and the negligence of the borrower, when it explained:

> The general rule that an owner of an automobile is not liable for the negligence of one to whom the automobile is loaned has no application in cases where the owner lends the automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, and likely to cause injuries to others *in the use of the automobile*; in such cases the owner is held liable for injuries caused by the borrower's negligence on the ground of his personal negligence in intrusting the automobile to a person who he knows is apt to cause injuries to another *in its use.*
>
> In such case the liability of the owner would not rest upon ownership or agency, but upon the combined negligence of the owner and driver–negligence of the father in intrusting the machine to an incompetent driver, and *negligence of the child in its operation.*

8

In her motion to dismiss, defendant argues that plaintiff failed to allege any facts showing causation in either Count I or III. Accordingly, the Court's analysis will focus exclusively on the causation element of plaintiff's claims. Causation requires a showing that the injury sustained was a foreseeable result of the duty breached:

> In order to recover in a negligence action, the breach of duty must be the actual and proximate cause of the injury. The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.[23]

Defendant argues that, if the proximate cause of Christopher Sloan's injuries was a gunshot wound, then the operation of Judy Overton's vehicle did not cause his injuries. Additionally, defendant notes that plaintiff has not alleged whether the bullets that caused decedent's injuries came from the firearm entrusted by Judy Overton to Blake Overton.

### A. Negligent Entrustment of the Vehicle

"A claim of negligent entrustment is based upon knowingly entrusting, lending, permitting, furnishing, or supplying an automobile to an incompetent or habitually careless driver."[24] In *Priestly v. Skourup*,[25] the Kansas Supreme Court reviewed various authorities and concluded,

> We have no hesitancy in concurring in the conclusion reached by

---

*Id.* (quoting 1 R.C.L. (Perm. Supp.) p. 673) (emphasis added).

[23] *Baker v. City of Garden City*, 731 P.2d 278, 280 (Kan. 1987) (citing *Wilcheck v. Doonan Truck & Equip., Inc.*, 552 P.2d 938 (Kan. 1976)); *see also Davey v. Hedden*, 920 P.2d 420, 429 (Kan. 1996).

[24] *McCart v. Muir*, 641 P.2d 384, 387 (Kan. 1982) (citing *Fogo, Administratrix v. Steele*, 304 P.2d 451 (Kan. 1956); *Neilson v. Gambrel*, 520 P.2d 1194 (Kan. 1974)).

[25] 45 P.2d 852 (Kan. 1935).

9

> the trial court . . . that the owner of an automobile, who lends it to one he knows to be an incompetent, careless, and reckless driver, or had reasonable cause to know him to be such, is guilty of negligence in permitting such party *to use, drive, or operate* the same along the public streets of a city, and is liable to third parties injured by such driver in *the negligent operation of such automobile*.[26]

The rationale of *Richardson v. Erwin*[27] is also instructive in this case. In *Richardson*, the Kansas Supreme Court noted that negligent entrustment is not actionable *unless* "negligence of the immediate actor in the operation of the automobile at the time and place in question is first established."[28]

The Court begins by noting that plaintiff has not alleged any facts relevant to causation. Under the standard articulated in *Ashcroft v. Iqbal*,[29] the Court is only permitted to assume as true *facts* that are actually alleged by plaintiff.[30] Legal conclusions are not entitled to the

---

[26]*Id.* at 855 (emphasis added); *see Mid-Century Ins. Co. v. Shutt*, 845 P.2d 86, 87–88 (Kan. Ct. App. 1993) ("A claim of negligent entrustment arises where an owner of an automobile loans it to a third person whom the owner knows or has reasonable cause to know is incompetent, careless, and reckless. The owner is liable to third parties who are injured by the borrower in the negligent operation of the vehicle."); *McCart v. Muir*, 641 P.2d 384, 388 (Kan. 1982) (setting out the elements of negligent entrustment as follows: "(1) The father, as co-signer on the automobile finance papers and as co-owner on the certificate of title, was instrumental in furnishing the motor vehicle to his son, Stephen, (2) the father knew or should have known Stephen was an incompetent driver, and (3) the negligence of Stephen in operating the vehicle was a cause of the damages").

[27]255 P.2d 641 (Kan. 1953).

[28]*Id.* at 644 ("negligence on the part of the father would not render him liable in the absence of negligence by the son in operating the car at the time of the collision"); *see also* 8 AM. JUR. 2D *Automobiles* § 617 (Westlaw 2009) ("[U]nder the theory of negligent entrustment, liability does not rest upon imputed negligence or upon ownership or agency; it rests upon the combined negligence of the owner and the driver – negligence of the owner in entrusting the vehicle to an incompetent driver, and negligence of the driver in its operation."); 61 C.J.S. *Motor Vehicles* § 838 (Westlaw 2009) (noting that the automobile owner is not liable under theory of negligent entrustment "until some wrong is committed by the one to whom it is entrusted").

[29]*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937 (2009).

[30]*Id.* at 1949–50.

presumption of truth.[31] Plaintiff has alleged merely that "[a]s a direct and proximate result of the breaches of duty by Judy Overton, . . . Christopher Sloan suffered . . . gunshot wounds to his shoulder."[32] The Court is not entitled to presume this legal conclusion is true without some factual support. More importantly, plaintiff's Complaint does not demonstrate any causal relationship between Blake Overton's use of Judy Overton's car and the gunshot wounds Christopher Sloan is alleged to have suffered.

Defendant notes that the Complaint contains no factual allegations that Christopher Sloan's injuries were caused by Blake Overton's reckless or careless operation of the automobile. In fact, she notes that there are no facts showing Blake Overton "operated the automobile in a way that violated any rule of the road, traffic law or regulation, speed limit, stop sign, failure to yield, collision with another automobile, object or person, or that at the time of injury the automobile was even moving."[33] In plaintiff's response, he provides additional facts, explaining that "the negligent operation of the motor vehicle (driving the motor vehicle into a known high crime area) led to the injuries and death of [Christopher Sloan]."[34]

The Court agrees with defendant. If Blake Overton was not *negligent* in the operation of the vehicle, and Blake Overton's operation of the vehicle did not *cause* decedent's injuries, then Judy Overton cannot be held liable for negligent entrustment of the vehicle. Assuming an automobile accident was foreseeable from Blake Overton's use of Judy Overton's car, such

---

[31]*Id.*

[32](Doc. 1 at 6.)

[33](Doc. 48 at 5.)

[34] (Doc. 55 at 7.)

11

accident did not occur in this case; rather, the automobile was merely the location where the gunshot injury occurred. If the vehicle Judy Overton entrusted did not directly or proximately *cause* any injuries to anyone, Judy Overton may not be held liable for negligent entrustment of the vehicle. The Court finds plaintiff's allegations are insufficient to state a claim for negligent entrustment of the vehicle. Any amendment plaintiff might make would be futile, as plaintiff has proffered no additional facts that would demonstrate a causal connection between Judy Overton's entrustment of the vehicle and Christopher Sloan's injuries.[35]

### B. Negligent Entrustment of the Firearm

As discussed above, "[a] duty exists not to give control of a dangerous instrumentality to a person who is incapable of handling or using it carefully."[36] To prevail on a claim of negligent entrustment, plaintiff's injury must be caused by the negligent use of the instrumentality that was entrusted to the borrower's care.[37]

Plaintiff's Complaint does not explain how Christopher Sloan received gunshot wounds, other than to state that "[a]s a direct and proximate result of the breaches of duty by Judy Overton and Blake Overton, Christopher Sloan suffered severe physical pain and suffering, . . . and ultimately died as a result of the gunshot wounds."[38] This is a classic example of a formulaic recitation of the elements of a cause of action, which is clearly insufficient under the *Iqbal* standard. On a motion to dismiss, a party is required to plead sufficient facts to make a claim

---

[35] *See, e.g.*, *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001); *Huxall v. First State Bank*, 842 F.2d 249, 250 n.2 (10th Cir. 1988).

[36] *Estate of Pemberton v. John's Sports Center, Inc.*, 135 P.3d 174, 187 (Kan. Ct. App. 2006).

[37] *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 390, wherein the lender's liability is limited to the harm caused by the borrower's negligent use).

[38] (Doc. 1 at 9.)

plausible. Because this is a legal conclusion with no factual support, let alone facts giving rise to a plausible claim, the Court finds that it fails to state a claim upon which relief may be granted. However, to the extent plaintiff may allege additional facts supporting such a claim, the Court finds it just to permit plaintiff to file a motion for leave to amend.

In plaintiff's response, he provides additional facts, claiming, "Blake Overton reached for a gun and that is what prompted [Katreal Harris] to shoot [Blake] Overton and [Christopher Sloan]. The use of the gun was in reaching for it from the console and attempting to point it at the assailant, Katreal Harris."[39] Christopher's gunshot wound came from a gun shot by Katreal Harris. Plaintiff assumes that Katreal Harris's decision to fire his gun was in direct response Blake Overton's "reach[ing] for a gun." Even though Katreal Harris's criminal conduct was the direct cause of Christopher Sloan's death, it is unclear from the facts provided whether Blake Overton's manner of handling the gun created a foreseeable risk of injury to Christopher Sloan, such that it imposed on Blake Overton a duty to act with reasonable care.[40] Whether Blake Overton's use of the gun was negligent may depend on a consideration of additional facts.

---

[39](Doc. 55 at 15.)

[40]*Estate of Pemberton*, 135 P.3d at 189 (quoting *South v. McCarter*, 119 P.3d 1, 13 (Kan. 2005). The Court noted that "there was no duty absent a showing the risk of harm was foreseeable":

> Foreseeability, for the purpose of proving negligence, is defined as a common-sense perception of the risks involved in certain situations and includes whatever is likely enough to happen that a reasonably prudent person would take it into account. [Citation omitted] An injury is foreseeable *so as to give rise to a duty of care* where a defendant knows or reasonably should know that an action or the failure to act will likely result in harm.

*Id.* at 189. In discussing whether an intervening act broke the chain of causation under a claim for negligent entrustment, the Kansas Supreme Court has noted, "One who has a duty to protect others, and who negligently breaches that duty, resulting in injury, is not excused by intervening innocent, negligent, intentionally tortious, or criminal acts of a third person." *Long v. Turk*, 962 P.2d 1093, 1100 (Kan. 1998); *see also Davey v. Hedden*, 920 P.2d 420, 430 (Kan. 1996) (discussing concepts of proximate cause and intervening cause as they relate to a negligent entrustment claim).

13

At the end of plaintiff's response, he requests that he be granted leave to amend his Complaint. Until plaintiff has an opportunity to propose an amendment to his Complaint, providing additional facts in support of his claim for negligent entrustment of the firearm, the Court cannot rule on whether plaintiff is able to state a claim upon which relief may be granted under Count III. In submitting a motion for leave to amend under D. Kan. R. 15.1, plaintiff must attach a copy of his proposed amended complaint.[41]

Defendant's Motion to Dismiss was filed after the time allowed in the Scheduling Order for filing motions for leave to amend pleadings.[42] Because defendant's Motion to Dismiss has only recently put plaintiff on notice of the insufficiency of his pleading, the Court is inclined to allow plaintiff the opportunity to file a motion for leave to amend his Complaint.[43] However, plaintiff is reminded that the Court may deny a motion for leave to amend under Fed. R. Civ. P. 15 if such amendment would be futile.[44] The Court will properly analyze the futility of the amendment under the standard enunciated above that would apply on a motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Dismiss (Doc. 47) is **granted as it relates to Count I, and denied without prejudice as it**

---

[41] D. Kan. R. 15.1. Subsection (a) of the rule states as follows:

A party filing a motion to amend or a motion for leave to file a pleading or other document that may not be filed as a matter of right must:

(1) set forth a concise statement of the amendment or leave sought;
(2) attach the proposed pleading or other document; and
(3) comply with the other requirements of D. Kan. Rules 7.1 through 7.6.

[42] (Doc. 29 at 2.)

[43] The Court is not inclined to consider the underlying briefs sufficient to convert plaintiff's response into a motion for leave to amend.

[44] *See, e.g., Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001); *Huxall v. First State Bank*, 842 F.2d 249, 250 n.2 (10th Cir. 1988).

**relates to Count III. Plaintiff's request to file a motion for leave to amend the complaint is granted, in relation to Count III. Plaintiff shall file his motion for leave to amend the Complaint no later than March 15, 2010. Such motion shall be made in compliance with D. Kan. Rule 15.1. Defendant shall respond by March 26, 2010. No reply shall be filed.**

  **IT IS SO ORDERED.**

Dated: <u>March 3, 2010</u>

                 <u> S/ Julie A. Robinson            </u>
                 JULIE A. ROBINSON
                 UNITED STATES DISTRICT JUDGE