IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID SLOAN, et al., )
)
                Plaintiffs, )
)
vs. ) Case No. 08-2571-JAR
)
)
ESTATE OF BLAKE OVERTON, et al., )
)
                Defendants. )
)

## MEMORANDUM AND ORDER

This tragic case involves the legal survivors, the parents, of two young men who were the victims of a violent crime committed in 2007. During an attempted drug purchase, Christopher Sloan, the passenger in a vehicle driven by Blake Overton, was fatally shot. Although Blake Overton survived his gunshot wound that day, he later died. The Sloan and Overton families witnessed the conviction of Katreal Harris for the murder of Christopher Sloan and the attempted murder of Blake Overton. This lawsuit followed, brought by David Sloan, as father and administrator for the Estate of Christopher Sloan, against Judy Overton, the mother of Blake Overton, as well as the Estate of Blake Overton, for negligence.

This matter comes before the Court on defendant Estate of Blake Overton's motion for summary judgment (Doc. 192). In a separate opinion filed today, the Court rules upon defendant Judy Overton's motion for summary judgment. Having duly considered the parties' submissions, the Court grants defendant Estate of Blake Overton's motion for summary judgment (Doc. 192), for the reasons described below.

**I.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to

---

[1] Fed. R. Civ. P. 56(a).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[6] *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

"set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[11] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[12] When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[13]

At the outset, the Court notes that the parties have failed to abide by the rules governing summary judgment motions, rendering the Court's determination of the appropriate factual record laborious and difficult. First, plaintiffs purport to controvert a number of defendant's factual assertions, by referring to plaintiffs' own unsupported factual contentions in the Pretrial Order. Rule 56(c)(1) mandates procedures for supporting factual assertions or supporting an

---

[8]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[12]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[13]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

assertion that a fact is genuinely disputed:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.[14]

And this Court's local rule, D. Kan. Rule 56.1(b)(1), requires that one opposing a motion for summary judgment identify in numbered paragraphs each fact in dispute, referring "with particularity those portions of the record upon which the opposing party relies." This Court's local rule further requires that:

> All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions. Affidavits or declarations must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible in evidence. Where facts referred to in an affidavit or declaration are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached.[15]

To the extent that plaintiffs have failed to support their statements of fact in accordance with these rules, the Court disregards those unsupported statements of fact.

Similarly, in its reply memorandum, defendant objects to some of plaintiffs' factual assertions, without appropriate support. To the extent plaintiffs properly supported their factual assertions in their response memorandum, but defendant failed to properly support assertions in reply, the Court disregards defendant's factual assertions. In short, the Court undertook the laborious process of determining what *are* the properly supported, uncontroverted facts in this

---

[14]*Id.*

[15]D.Kan. R. 56.1(d).

case, and the Court's decision is based solely on those facts. Rule 56(e) gives the Court the discretion to consider as uncontroverted, facts that one party asserts are controverted yet fails to support with proper reference to the record.[16]

Furthermore, the Court is mindful that Rule 56(c)(2) provides for an objection that a fact is not supported by admissible evidence: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[17] Plaintiffs object that defendant cannot rely upon the testimony of the prosecutor in the criminal case that there was no gun recovered from the car or the scene of the crime. But the Court finds that the prosecutor, who gathered the evidence, evaluated and presented it at trial, has sufficient personal knowledge to offer admissible testimony on this issue. On the other hand, the Court disregards hearsay evidence that Christopher Sloan's mother told Blake Overton's mother that the boys were trying to buy drugs for her; as Christopher Sloan's mother is now deceased and unavailable to testify.[18]

Finally, the Court is mindful of the case law that directs courts to disregard so-called "sham affidavits."[19] Defendant argues that K.C. Nachbar's affidavit should be disregarded by the Court, as it is a sham affidavit. Plaintiffs offer this affidavit, in which Nachbar avers that on the date of the tragic incident, Christopher Sloan called Nachbar, inquiring about purchasing drugs. Defendant claims that this affidavit is a sham because it is allegedly controverted by the

---

[16] Fed. R. Civ. P. 56(e).

[17] Fed. R. Civ. P. 56(c)(2).

[18] *See* Fed. R. Evid. 802, 804.

[19] *See, e.g.*, *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986).

testimony of a police detective that he did not find Nachbar's phone number on Sloan's log of outgoing calls. But defendant misunderstands the definition of a sham affidavit. Although Nachbar's affidavit may be controverted by the police detective's testimony, and conversely the detective's testimony may be controverted by Nachbar's affidavit, that does not render Nachbar's affidavit a "sham." Rather, a sham affidavit is one in which an affiant controverts his or her own prior statement or testimony without reasonable explanation or justification.[20] Moreover, the Court observes that even though whether Sloan called Nachbar that day is a disputed issue of fact, the detective testified that he only checked the last ten outgoing calls from Sloan's cell phone. There was no definitive evidence that Sloan used his cell phone, rather than another phone, to call Nachbar, if in fact he called Nachbar that day.

## II. Uncontroverted Facts

With the above rules of law and principles of application in mind, the following facts are uncontroverted, stipulated to, or viewed in the light most favorable to plaintiffs. On April 17, 2007, Overton was the driver and Sloan the passenger in a car owned by Overton's mother, Judy Overton. Overton and Sloan traveled to Kansas City, Kansas for purposes of purchasing cocaine. It is disputed whether the drugs were to be purchased for Overton, or Sloan or both. A torn $20.00 bill was found at the scene of the incident, which was tested and found to have the blood of Sloan on it. Overton had been in that area of Kansas City, Kansas on prior occasions to

---

[20]"[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting [evidence] contradicting his own prior testimony." *Franks*, 796 F.2d at 1237. The Court looks at the following factors to determine if an affidavit presents a sham fact issue: "whether the [party] was cross-examined during his earlier testimony, whether the [party] had access to pertinent evidence at the time of his earlier testimony, or whether the [contested evidence] was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the [contested evidence] attempts to explain." *Id.*

6

purchase cocaine. It is disputed whether Sloan had purchased drugs in that area before. In urine testing performed during the autopsy of Sloan, his urine tested positive for the presence of cocaine and methamphetamine; yet his blood tested negative for those substances. Whether or not Sloan had used drugs that day or before, it is undisputed that Overton and Sloan both knew the purpose of the trip was to purchase drugs; and it is undisputed that Sloan voluntarily accompanied Overton on the trip.

Upon arriving in the subject area, Overton stopped the car, and while the engine was running and headlights were on, he engaged in a conversation with Katreal Harris about the whereabouts of an individual called "Trey" who purportedly sold drugs. Overton did not know Harris; and asked for "Trey." Sloan did not engage in the conversation between Overton and Harris; he sat silently in the passenger seat. In the course of their conversation, Overton and Harris exchanged contentious words. Harris observed Overton reach towards the console between the two front seats of the vehicle. Thinking Sloan was reaching for a gun, Harris fired upon Overton and Sloan. No firearm was ever found or recovered from Overton's vehicle, nor from the persons of Overton or Sloan. Harris gave a statement to law enforcement officers that he saw Overton reach for a handle of a gun; but later, during his murder trial, Harris recanted this statement, testifying that he saw no gun, but only thought Overton was reaching for a gun.

Harris fired at Overton and Sloan. The first shot hit Overton, passed through his body and hit Sloan. Harris fired a second time, hitting Sloan. Harris heard Sloan exclaim "what the fuck!" between the first and second shots. Although both of Sloan's gunshot wounds were fatal, the medical examiner testified that the shot to Sloan's head would have killed him instantaneously or within seconds, while the gunshot to Sloan's chest may not have caused

instantaneous death. Yet ,the examiner could not tell which of the two gunshot wounds Sloan sustained first. Sloan died at the scene of the shooting as a result of his wounds. When EMTs arrived, they found Sloan to have pulseless electrical activity, meaning electricity was motivating the heart to work, but the heart had been without oxygen long enough that the muscle was no longer working.

Harris was charged with shooting both men. A jury convicted Harris of the first degree murder of Sloan, attempted murder of Overton, and criminal possession of a firearm.

## III. Discussion

In their capacities as the Heir at Law and the Estate of Christopher Sloan, plaintiffs bring this wrongful death and survival action against defendant Estate of Blake Overton, for negligent performance of an undertaking to render services.

### A. *Negligence*

Defendant moves for summary judgment on the basis that there are insufficient facts to support plaintiffs' claim of negligence. Specifically, that there are no facts supporting plaintiffs' claim that Overton had a duty to protect Sloan during their undertaking, nor that Overton's actions heightened the risk and thereby caused Sloan's injuries. Defendant also moves for summary judgment on plaintiffs' claim for damages for survival, on the basis that there is no evidence of Sloan's conscious pain and suffering.

Plaintiffs' claim of negligence is brought pursuant to The Restatement (Second) of Torts § 323, for Negligent Performance of Undertaking to Render Services. Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to
> another which he [or she] should recognize as necessary for the protection of the
> other's person or things, is subject to liability to the other for physical harm
> resulting from his [or her] failure to exercise reasonable care to perform his [or

8

her] undertaking, if,
> (a) his [or her] failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

In order to analyze plaintiffs' claim under this provision, it is first necessary to determine the "undertaking" by Overton, for the extent of the undertaking defines the scope of the duty.[21] Defendant argues that the extent of Overton's undertaking was to drive the two men to Kansas City, Kansas, an undertaking that was completed when he stopped the car, and before the tragedy unfolded. Because plaintiffs do not allege that Sloan was injured or killed as a result of a motor vehicle accidence or Overton's violation of any rule of the road, traffic ordinance, or traffic law, defendant argues that plaintiffs cannot show causation, nor that Overton failed to exercise reasonable care in his undertaking to drive the two men to a particular location.

But plaintiffs argue that the undertaking was more, it was to drive the two men to a location to purchase drugs. To be sure, courts in Kansas have narrowly construed the scope of an undertaking.[22] But the Court agrees with plaintiffs that the uncontroverted evidence establishes that the undertaking included more than just driving the car and stopping it in a particular location; the undertaking was to drive the car to a particular location for a particular purpose, to purchase drugs. To determine the extent of an undertaking and thus the extent of the

---

[21] *McGee v. Chalfant*, 806 P.2d 980, 985–86 (Kan. 1991).

[22] *See, e.g., Cunningham v. Braum's Ice Cream & Dairy Stores*, 80 P.3d 35, 43 (Kan. 2003) (holding that store's emergency action plan did not create an undertaking to refrain from shooing customers out of store during a tornado warning and after getting reports of a tornado sighting); *Honeycutt v. City of Wichita*, 836 P.2d 1128, 1142 (Kan. 1992) (holding school district's handbook that safety patrol should be stationed at railroad crossing as needed was not an affirmative assumption of a duty to provide safety patrol at railroad so as to constitute an undertaking); *Geiger-Schorr v. Todd*, 901 P.2d 515, 520 (Kan . Ct. App. 1995) (concluding that KAAMCO had not undertaken to inform nondirectly insured physicians about certain malpractice coverage); *cf. Sall v. T's, Inc.*, 136 P.3d 471, 477–78 (Kan. 2006) (holding golf course undertook and thus, had a duty to protect, golfers from harm caused by lightning strikes).

9

duty, the Court looks to "a defendant's agreement or affirmative act indicating a willingness to provide services [as] a threshold requirement for such a duty to arise."[23] It is undisputed that Overton agreed to drive the two men to a location in Kansas City, Kansas to purchase drugs. Thus, the undertaking did not end when Overton parked the car, the undertaking including the ensuing attempt to purchase drugs.

But, plaintiffs contend that the undertaking also included Overton's agreement to provide security for Sloan during the drug transaction. Yet there is no evidence showing any agreement to provide security to Sloan. Plaintiffs contend that Overton had a gun for security and attempted to use it during the course of the drug transaction, all signifying his agreement to provide security. These are controverted facts; no gun was ever recovered from the vehicle or the scene, and Katreal Harris gave conflicting statements and testimony about whether he actually saw a gun in the car. But even if there was uncontroverted evidence that Overton had a gun and attempted to reach for the gun during the transaction, that alone does not establish an agreement or assumption of a duty to provide security for Sloan. This evidence merely establishes that Overton desired to protect himself.

Moreover, even if § 323 establishes a duty to affirmatively exercise the undertaking with reasonable care absent an express agreement, there is no evidence showing Overton failed to exercise reasonable care in performing the undertaking. As the Kansas Supreme Court pointed out in *Burgess v. Perdue*,[24]

> "In most of the cases finding liability, the defendant has made the situation worse, either by increasing the danger, by misleading the plaintiff into the belief that it

---

[23]*Cunningham*, 80 P.3d at 42.

[24]721 P.2d 239 (Kan. 1986).

10

has been removed, or by depriving him of the possibility of help from other sources. Many of the decisions state that some such element is necessary, and that there can be no liability where the conduct in no way aggravates the situation or misleads the plaintiff, and he is left no worse off than he was before."[25]

While there are no uncontroverted facts supporting plaintiffs' assertion that Overton agreed to provide security for Sloan and to protect him from harm, by undertaking to drive the two of them to a location for purposes of purchasing drugs, Overton had a duty to exercise reasonable care in that undertaking. The real question in this case is whether there is a genuine issue of material fact whether Overton, in effecting his undertaking to drive the two men to a location to buy drugs, failed to exercise reasonable care in performing the undertaking by increasing the risk of harm.

Plaintiffs argue that the Court, in deciding a motion for summary judgment, may only determine whether there was an actionable duty, but determining whether the duty was breached is an issue of fact that should be determined by the jury. To be sure, summary judgment should be granted with caution in negligence actions,[26] but summary judgment is warranted if plaintiff can point to no controverted facts that place in issue a particular element of the negligence claim.[27] Although plaintiffs recognize that they must prove that Overton's behavior increased the risk to Sloan, plaintiffs fail to point to facts that support this element.

At best, when viewed in the light most favorable to the plaintiffs, Katreal Harris saw Overton reach for what looked like the handle of a gun. But there is no evidence that suggests that Overton's conduct, whether it was reaching for an actual gun, or pretending to reach for a

---

[25]*Id.* at 246 (quoting Prosser and Keeton on Torts §56, pp. 381-82 (5th ed.1984)).

[26]*Esquivel v. Watters,* 183 P.3d 847, 852 (Kan. 2008); *Edwards v. Anderson Eng'g, Inc.,* 166 P.3d 1047, 1056 (Kan. 2007).

[27]*See Edwards*, 166 P.3d at 1056

11

gun, was conduct that heightened the risk to Sloan. There is no evidence in the record suggesting that Overton's furtive movement to the console was unreasonable under the circumstances. For example, if Harris was already brandishing a weapon at the time Overton reached towards the console, a reasonable jury might find that Overton's action was unreasonable, particularly if Overton had no gun in the console. Of course plaintiffs maintain that Overton had a gun in the car, despite law enforcement never finding any gun in the car. Moreover, if Harris was not brandishing a weapon at the time Overton reached towards the console, a reasonable jury might find that Overton was attempting to protect himself and Sloan by scaring Harris into backing off. In any case, the record is silent on whether Harris was already brandishing a gun at the point that Overton reached towards the console, or whether Harris pulled the gun only after Overton reached for the console. Given the lack of any evidence about the sequence of events, plaintiffs cannot show that Overton's action heightened the risk.

Sloan argues that Overton should have opted to drive away. But Sloan points to no evidence that demonstrates that this was a viable option. There is no evidence as to how and where, specifically, this running car was parked, and whether there was a realistic opportunity to leave. The question was whether Overton's conduct was reasonable at the time; plaintiffs offer no uncontroverted facts establishing that Overton's conduct heightened the risk or was otherwise unreasonable; nor do plaintiffs offer any controverted facts placing this in genuine issue.

The Court simply cannot determine the reasonableness of Overton's conduct, nor whether his conduct heightened the risk, solely with the benefit of hindsight. As the Kansas Supreme Court explained in *Cunningham*, hindsight is insufficient to conclude as a matter of law that someone committing an undertaking acting unreasonably when one is dealing with

capricious forces.[28] In that decision, the Kansas Supreme Court noted that even if a store's emergency action plan included a provision to keep customers inside the store during a severe weather event, tornadoes are "notorious for their caprice," arbitrarily striking one item, while leaving untouched items in close proximity, such that the court could not find as a matter of law that the store acted unreasonably in allowing customers to leave at a time when a tornado warning was in place and there were reports of a tornado sighting in the area. Although defendant argues that the capriciousness of drug dealers is analogous to the capriciousness of tornados, the Court finds more persuasive the argument that only through hindsight could one say that Overton's action heightened the risk during the drug deal gone awry. There simply is no evidence supporting the element that Overton acted unreasonably, by in effect engaging in conduct that heightened the risk.

    **B.**    *Survival*

Plaintiffs include, on behalf of the Estate of Christopher Sloan, a claim in the nature of a survival action pursuant to K.S.A. 60-1801, *et seq*. Given the Court's ruling granting defendant summary judgment on plaintiffs' negligence claim, the Court need not address defendant's motion for summary judgment on the survival action brought by the estate of Christopher Sloan. Nonetheless, the Court concludes that defendant is entitled to summary judgment on this as well.

The law is well established that a condition precedent to a survival action is competent evidence of conscious pain and suffering by the decedent, in this case, Sloan.[29] But the uncontroverted evidence merely demonstrates that sometime between the first and second

---

[28]*Cunningham*, 80 P.3d at 43.

[29]*See*, *e.g*., *St. Clair v. Denny*, 781 P.2d 1043, 1049 (Kan. 1989).

gunshots, Harris heard Sloan exclaim. Although there is evidence that the first shot hit Overton, passed through his body and then hit Sloan, there is no evidence that Sloan's exclamation was in response to him being hit with the gunshot, or whether it was in response to seeing or hearing the weapon firing. This is compounded by the lack of any evidence as to whether Sloan's first wound was to the head, which the medical examiner testified would have caused instantaneous death or death within seconds, or whether the first wound was to the chest.

In addition to the absence of any evidence that Sloan's exclamation was in response to him being shot, there is no other evidence that Sloan uttered any audible words or other sounds indicating he was experiencing pain or suffering, or that he was responsive to outside stimuli. And although plaintiffs offer the testimony of the EMTs, that Sloan had pulseless electrical activity when they arrived, there is no expert medical evidence explaining the import of that, or whether that would indicate that Sloan suffered conscious pain and suffering for any period of time, however brief. The Court thus grants summary judgment on the survival claim as well.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. 192) against plaintiffs David Sloan and Estate of Christopher Sloan is **granted**.

Dated: May 20, 2011

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE