IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID SLOAN, et al., )
 )
 Plaintiffs, )
 )
vs. ) Case No. 08-2571-JAR
 )
 )
JUDY OVERTON, et al., )
 )
 Defendants. )
_____ )

## MEMORANDUM AND ORDER

This tragic case involves the legal survivors, the parents, of two young men who were the victims of a violent crime committed in 2007. During an attempted drug purchase, Christopher Sloan, the passenger in a vehicle driven by Blake Overton, was fatally shot. Although Blake Overton survived his gunshot wound that day, he later died. The Sloan and Overton families witnessed the conviction of Katreal Harris for the murder of Christopher Sloan and the attempted murder of Blake Overton. This lawsuit followed, brought by David Sloan, as father and administrator for the Estate of Christopher Sloan, against Judy Overton, the mother of Blake Overton, as well as the Estate of Blake Overton, for negligence.

This matter comes before the Court on defendant Judy Overton's motion for summary judgment (Doc. 195). In a separate opinion filed today, the Court rules upon defendant Estate of Blake Overton's motion for summary judgment. Having duly considered the parties' submissions, the Court grants defendant Judy Overton's motion for summary judgment (Doc. 195), for the reasons described below.

**I.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to

---

[1] Fed. R. Civ. P. 56(a).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[6] *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

"set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[11] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[12] When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[13]

## II. Uncontroverted Facts

With the above rules of law and principles of application in mind, the following facts are uncontroverted, stipulated to, or viewed in the light most favorable to plaintiffs.

On April 17, 2007, Blake Overton was the driver and Christopher Sloan the passenger in a car owned by Blake Overton's mother, Judy Overton. Blake Overton and Christopher Sloan

---

[8]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[12]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[13]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

("Sloan") traveled to Kansas City, Kansas for purposes of purchasing cocaine. Judy Overton had no knowledge of Blake Overton's intention to travel to Kansas City, Kansas. After Blake Overton and Sloan arrived at a location in Kansas City, Kansas, and while they were sitting in the car, Katreal Harris shot both of them. Sloan died at the scene; Blake Overton survived the shooting, but has since died.

Judy Overton had a pellet pistol stored at her personal residence prior to the incident on April 17, 2007. Blake Overton denied having a gun with him during the incident and also denied that Sloan had a gun. Katreal Harris gave a statement to law enforcement officers that he saw Blake Overton reach for a handle of a gun; but later, during his murder trial, Harris recanted this statement, testifying that he saw no gun, but only thought Blake Overton was reaching for a gun in the console between the two front seats. Two .40 caliber shell casings were recovered from the scene of the crime, which matched the .40 caliber firearm used by Harris; no other shell casings or ammunition were recovered. Police investigating the shooting found no evidence at the scene that Blake Overton had possessed a firearm on his person or in the car.

After seeing Blake Overton reach towards the console or the gun, Harris fired two shots at Blake Overton and Sloan. The first shot hit Blake Overton, passed through his body and hit Sloan. Harris fired a second time, hitting Sloan. Harris heard Sloan exclaim "what the fuck!" between the first and second shots. Although both of Sloan's gunshot wounds were fatal, the medical examiner testified that the shot to Sloan's head would have killed him instantaneously or within seconds, while the gunshot to Sloan's chest may not have caused instantaneous death. Yet the examiner could not tell which of the two gunshot wounds Sloan sustained first. Sloan died at the scene of the shooting as a result of his wounds. When EMTs arrived, they found

Blake Overton and Sloan unresponsive. The EMTs found Sloan to have pulseless electrical activity, meaning electricity was motivating the heart to work, but the heart had been without oxygen long enough that the muscle was no longer working.

A jury convicted Katreal Harris of first-degree murder for his shooting of Christopher Sloan, attempted murder for his shooting of Blake Overton, and criminal possession of a firearm.

## III. Discussion

In their capacities as the heir at law and the estate of Christopher Sloan, plaintiffs bring this wrongful death and survivors action against defendant Judy Overton , for negligent entrustment of a firearm to Blake Overton.

### A. *Negligent Entrustment*

Under Kansas law, the tort of negligent entrustment under The Restatement (Second) of Torts § 390 is recognized as a cause of action having four elements: (1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that it is the cause in fact of injury or damage to another.[14] The first element, entrustment, occurs when one "supplies directly or through a third person a chattel for the use of another . . . ."[15] Historically, Kansas courts have applied negligent entrustment principles to situations where an owner of property has loaned or permitted access to the property by another; the majority of the cases involve an owner who has permitted a known reckless or incompetent

---

[14] *Shirley v. Glass*, 241 P.3d 134, 144 (Kan Ct. App. 2010) (citing *McCart v. Muir*, 641 P.2d 384, 387–88 (Kan. 1982); Restatement (Second) of Torts § 390 (1965)).

[15] *Id.* (quotation omitted).

person to use his or her vehicle.[16]

Plaintiffs do not bring a claim for negligent entrustment of the vehicle to Blake Overton; rather, their claim is for Judy Overton's negligent entrustment of a firearm to Blake Overton. To be sure, summary judgment should be granted with caution in negligence actions,[17] but summary judgment is warranted if plaintiff can point to no controverted facts that place in issue a particular element of the negligence claim.[18] Here, plaintiffs can point to no facts that create a genuine issue as to whether Judy Overton entrusted a firearm to Blake Overton.

Negligent entrustment is "knowingly entrusting, lending, permitting, furnishing, or supplying . . . " property to another.[19] Despite the lack of evidence that there was a firearm in the car—no firearm being recovered and Katreal Harris' recantation during his trial testimony, acknowledging that he only thought Blake Overton might have a gun—when viewed in the light most favorable to the plaintiffs, Harris' initial statement to law enforcement creates an issue of fact as to whether Blake Overton had a gun. Yet, there is no issue of fact as to whether Judy Overton *knowingly* entrusted a firearm to Blake Overton. Judy Overton denies having possession of anything other than a pellet gun and denies giving this or any other firearm to Blake Overton. Plaintiff relies on the affidavit of David Sloan to create an issue of fact in that regard. Mr. Sloan avers that:

---

[16]*See Tran v. Nguyen*, 238 P.3d 314, 318–19 (Kan. Ct. App. 2010) (applying to entrustment of a vehicle to another). *But see Estate of Pemberton v. John's Sports Ctr., Inc.,* 135 P.3d 174, 187–88 (Kan. Ct. App. 2006) (declining to decide whether negligent entrustment applies to sales transaction where parents alleged a claim against a firearms retailer who sold their son a firearm).

[17]*Esquivel v. Watters,* 183 P.3d 847, 852 (Kan. 2008); *Edwards v. Anderson Eng'g, Inc.,*166 P.3d 1047, 1056 (Kan. 2007).

[18]*See Edwards*, 166 P.3d at 1056.

[19]*McCart v. Muir,* 641 P.2d 384, (Kan. 1982) (citations omitted).

> On or about the morning of April 18, 2007, I met Judy Overton when I went to the University of Kansas Medical Center. I had a conversation with Judge Overton on April 18, 2007. During that conversation Judy Overton admitted to me she had inherited a handgun from her father. She told me she picked up the gun on Easter weekend 2007, shortly before April 17, 2007. During that conversation, Judy Overton admitted to me that she had not taken appropriate steps to safeguard the handgun and had left it accessible to Blake. She also said that she felt responsible for the shooting. During that conversation, Judy Overton indicated to me that despite the fact she wanted to do her best in raising Blake, she simply could not say not to him."

These statements do not controvert Judy Overton's statement that she did not give, loan or entrust a gun to Blake Overton. These statements merely tend to prove that Judy Overton had possession of a gun.

In his affidavit, David Sloan goes on to aver that "Judy Overton was well aware that Blake Overton had the use and possession of the handgun prior to April 17, 2007." But, this statement is not attributed to Judy Overton; rather, it is merely David Sloan's contention that Judy Overton knew that Blake Overton had possession of the gun. Statements based on such a lack of personal knowledge do not create genuine issues of fact. As explained in this Court's local rule, D. Kan. Rule 56.1(b)(1), "[a]ffidavits or declarations must be made on personal knowledge and by a person competent to testify to the facts."stated that are admissible in evidence."[20]

To the extent that Mr. Sloan's affidavit avers that Judy Overton was admittedly reckless in not securing the gun, the affidavit still fails to create a material issue of fact. For the tort of negligent entrustment requires that someone knowingly give, loan, permit, furnish or supply property to another. At best, Mr. Sloan's affidavit places in issue whether Judy Overton failed

---

[20]D. Kan. R. 56.1(b)(1);*Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010).

to secure the gun, allowing Blake Overton to obtain possession of it without Judy Overton's knowledge. Plaintiffs do not provide any authority that a reckless failure to secure a piece of property is actionable as negligent entrustment. Notably, Blake Overton was not a minor at the time of this incident.

For all of these reasons, the Court finds that summary judgment is appropriate on plaintiff's negligent entrustment claim against defendant Judy Overton.

### B.     Survival

Plaintiffs include, on behalf of the Estate of Christopher Sloan, a claim in the nature of a survival action pursuant to K.S.A. 60-1801, *et seq*. Given the Court's ruling granting defendant summary judgment on plaintiffs' negligence claim, the Court need not address defendant's motion for summary judgment on the survival action brought by the Estate of Christopher Sloan. Nonetheless, the Court concludes that defendant is entitled to summary judgment on this as well.

The law is well established that a condition precedent to a survival action is competent evidence of conscious pain and suffering by the decedent, in this case, Christopher Sloan.[21] But the uncontroverted evidence merely demonstrates that sometime between the first and second gunshots, Harris heard Sloan exclaim. Although there is evidence that the first shot hit Blake Overton, passed through his body and then hit Sloan, there is no evidence that Sloan's exclamation was in response to him being hit with the gunshot, or whether it was in response to seeing or hearing the weapon firing. This is compounded by the lack of any evidence as to whether Sloan's first wound was to the head, which the medical examiner testified would have caused instantaneous death or death within seconds, or whether the first wound was to the chest.

---

[21]*See*, *e.g*., *St. Clair v. Denny*, 781 P.2d 1043, 1049 (Kan. 1989).

In addition to the absence of any evidence that Sloan's exclamation was in response to him being shot, there is no other evidence that Sloan uttered any audible words or other sounds indicating he was experiencing pain or suffering, or that he was responsive to outside stimuli. And although plaintiffs offer the testimony of the EMTs, that Sloan had pulseless electrical activity when they arrived, there is no expert medical evidence explaining the import of that, or whether that would indicate that Sloan suffered conscious pain and suffering for any period of time, however brief. The Court thus grants summary judgment on the survival claim as well.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. 195) against plaintiffs David Sloan and Estate of Christopher Sloan is **granted**.

**Dated: May 20, 2011**

 **S/ Julie A. Robinson**
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**